**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JENNIFER CARROLL,<br><br>                    Plaintiff-Relator,<br><br>v.<br><br>HACKENSACK MERIDIAN PASCACK VALLEY MEDICAL CENTER, *et al.*,<br><br>                    Defendants. | Civ. Action No. 21-18104 (SDW) (ESK)<br><br>**OPINION**<br><br>December 14, 2023 |

**WIGENTON**, District Judge.

Before this Court are three separate motions to dismiss (D.E. 58–60 (the "Motions")) Relator Jennifer Carroll's ("Relator") Second Amended Complaint (D.E. 54 ("SAC")) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). The Motions were filed by three sets of Defendants: (1) Hackensack Meridian Pascack Valley Medical Center ("Pascack Valley"), Hackensack Meridian Mountainside Medical Center ("Mountainside"), and Ardent Health Services, LLC ("Ardent"); (2) Kayal Medical Center Hackensack ("Kayal"); and (3) Hackensack Meridian Health Network ("HMHN") and Hackensack University Medical Center ("HUMC," together with Pascack Valley, Mountainside, Ardent, Kayal, and HMHN, "Defendants"). (D.E. 58–60.) Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. § 3730(b). Venue is proper pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a). This opinion is issued without oral argument pursuant to Rule 78. For the reasons discussed below, Defendants' Motion is **GRANTED** and the SAC is **DISMISSED**.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

This case arises from Relator's allegations that Defendants, healthcare organizations that provide medical care to thousands of Medicare patients throughout New Jersey, engaged in a conspiracy to submit to the Government fraudulent claims for payment or approval. (D.E. 54 ¶¶ 2, 48–96.) Relator, a registered nurse, was the Director of Case Management for Pascack Valley from in or around February 2020 until February 2021. (*Id.* ¶¶ 48, 115, 125.) In that role, Relator reviewed hospital admissions regarding, among other procedures, total knee and hip replacements. (*Id.* ¶ 51.) She alleges that, during her time at Pascack Valley, she witnessed or was otherwise made aware of a conspiracy by which Defendants defrauded Medicare. (*Id.* ¶¶ 8–10.)

A.  **Medicare**

Medicare provides basic health insurance for individuals who are 65 or older, disabled, or have end-stage renal disease. (*Id.* ¶¶ 31.) It pays a significant portion of every claim made on behalf of beneficiaries; however, it does not pay "for any expenses incurred for items or services . . . [that] are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." (*Id.* ¶¶ 30, 32 (alterations in original).) As relevant here, Medicare reimburses providers for inpatient services only if "a physician certifies that such services are required to be given on an inpatient basis for such individual's medical treatment, or that inpatient diagnostic study is medically required and such services are necessary for such purposes." (*Id.* ¶ 33.)

The decision to admit a patient on an inpatient—rather than outpatient—basis requires a formal admission order from a doctor "who is knowledgeable about the patient's hospital course, medical plan of care, and current condition." (*Id.* ¶ 37.) Inpatient admission "is generally appropriate for payment under Medicare Part A when the admitting physician expects the patient

2

to require hospital care that crosses two midnights" (the "two-midnight rule"). (*Id.* ¶¶ 38–39.) Medicare also allows doctors to admit patients for inpatient treatment if that decision is supported by the medical record, which must contain "[t]he factors that [led] to a particular clinical expectation." (*Id.*)

Certain medical procedures, however, must be performed on an inpatient basis to qualify for Medicare coverage. (*See, e.g.*, *id.* ¶¶ 64–65.) Until recently, that list of procedures (the "IPO list") included total knee arthroplasty ("TKA") and total hip arthroplasty ("THA"). The Department of Health and Human Services, Centers for Medicare and Medicaid Services ("CMS")—the agency that administers Medicare (*id.* ¶ 34)—removed TKA and THA from the IPO list on January 1, 2018, and January 1, 2020, respectively. Medicare Program: Hospital Outpatient Prospective Payment and Ambulatory Surgical Center Payment System and Quality Reporting Programs, 82 Fed. Reg. 52356, 52522–25 (Nov. 13, 2017); Medicare Program: Changes to Hospital Outpatient Prospective Payment and Ambulatory Surgical Center Payment Systems and Quality Reporting Programs, 84 Fed. Reg. 61142, 61352–55 (Nov. 12, 2019).

**B. The Scheme**

Relator alleges that, after CMS removed the TKA and THA procedures from the IPO list, Defendants flouted Medicare's requirements regarding inpatient admissions for those procedures. Specifically, instead of conducting a case-by-case medical necessity review, Defendants' doctors allegedly pre-programmed SmartPhrase—a tool that allowed doctors to auto-populate information in clinical notes—to automatically input phrases that would falsely justify an inpatient stay regardless of the patient's medical condition. (*Id.* ¶¶ 58–66, 77.) Relator asserts that the main culprit was Kayal, a medical center that "occupie[s] the fourth floor of a wing of [Pascack Valley] and generate[s] tens of millions of dollars in revenues for Defendants." (*Id.* ¶¶ 16, 73–76.)

3

According to the SAC, the other Defendants were well aware of Kayal's practices and either affirmatively or tacitly approved thereof.  (*Id.* ¶¶ 76, 78–80.)  Indeed, when Relator and others tried to report these alleged misrepresentations, their concerns were either ignored or brushed aside.  (*Id.* ¶¶ 76, 78–81, 95.)  Eventually, Relator was terminated following an investigation into her violating HIPAA.  (*Id.* ¶ 110.)  Relator contends that she did not violate HIPAA; instead, she insists, the investigation was a cover for Pascack Valley's actual motivation for terminating her—her investigating and reporting about the scheme.  (*Id.* ¶¶ 111, 116, 119–20, 125–26.)

### C. Procedural History

On October 5, 2021, Relator filed this *qui tam* action under seal and on behalf of the United States.  (D.E. 1.)  On August 10, 2022, the Government declined to intervene and requested that the matter be unsealed, which this Court did on August 16, 2022.  (D.E. 6–7.)  Relator filed an amended complaint against all Defendants on November 9, 2022.  (D.E. 8 ("FAC").)  On January 17, 2023, Defendants filed three motions to dismiss the FAC.  (D.E. 33–35.)  Following several extensions, Relator opposed the motions to dismiss on March 30, 2023.  (D.E. 48.)  One week later, Relator filed a cross motion for leave to file a second amended complaint, which was granted on April 10, 2023.  (D.E. 52–53.)  The next day, Relator filed the SAC wherein she alleges several claims under the False Claims Act, 31 U.S.C. §§ 3729(a)(1), 3730(h), and a claim under New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-1, *et seq.* (D.E. 54.)  Defendants filed the instant Motions on May 9, 2023, and the parties timely completed briefing.  (D.E. 58–60; D.E. 62–65.)

## II. STANDARD OF REVIEW

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (confirming that "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief"). In other words, Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In addition, an FCA claimant must meet the stringent pleading standards of Rule 9(b) by pleading with particularity the circumstances constituting fraud or mistake. *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155–57 (3d Cir. 2014) (discussing Rule 9(b)'s heightened pleading standard in the FCA context).

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–11 (3d Cir. 2009) (discussing the *Iqbal* standard). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to

5

"show[] . . . that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.   DISCUSSION

Although Defendants have filed three separate motions to dismiss, the arguments therein largely overlap. At bottom, they contend that Relator's SAC suffers from various pleading deficiencies. This Court addresses the sufficiency of each claim in turn.

**A. Counts 1 & 2:  31 U.S.C. §§ 3729(a)(1)(A)–(B)**

Relator alleges in Counts 1 and 2 that Defendants[1] violated two subsections of the FCA. The first, section 3729(a)(1)(A), imposes liability on those who "knowingly present[], or cause[] to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). The second, section 3729(a)(1)(B), targets those who "knowingly make[], use[], or cause[] to be made or used, a false record or statement material to a false or fraudulent claim." *Id.* § 3729(a)(1)(B). To state a claim under either provision, Relator must plead that Defendants: "(1) made a false statement [or representation], (2) with scienter, (3) that was material, (4) causing the government to make a payment." *United States v. Care Alts.*, 81 F.4th 361, 366–67 (3d Cir. 2023); *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 317 (3d Cir. 2019) (explaining that "materiality is an element of all FCA claims, regardless of whether the specific statutory provision lists materiality as an element").

Defendants argue that Counts 1 and 2 must be dismissed because the SAC does not meet Rule 9(b)'s heightened pleading standard, and even if it did, Defendants contend, the SAC still fails to allege materiality.

---

[1] Relator asserts Count 1 against all Defendants and Count 2 against only Pascack Valley. (D.E. 54 ¶¶ 97–104.) Because the analysis is substantially the same, this Court will address both counts together.

1. Rule 9(b)'s Heightened Pleading Standard[2]

Rule 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Generally, "Rule 9(b)'s particularity requirement requires a plaintiff to allege all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where, and how of the events at issue." *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (internal quotation marks omitted). A relator need not plead "the date, time, place, or content of every single allegedly false" statement or misrepresentation. *Id.* Rather, he or she must set forth "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Foglia*, 754 F.3d at 157–58. "Describing a mere opportunity for fraud will not suffice. Sufficient facts to establish 'a plausible ground for relief' must be alleged." *Id.* at 158.

Here, the SAC does not meet Rule 9(b)'s heightened pleading standard—it merely describes an opportunity for fraud without alleging particular details of the scheme. Although the SAC illustrates a choreographed scheme in which unnamed doctors used automatic coding to justify inpatient treatment for patients who should have been treated on an outpatient basis, it contains only general assertions of wrongdoing against one Defendant and blanket allegations of complicity therewith by the others. Specifically, the SAC states that Kayal was the main perpetrator of the fraud and that the other Defendants were either actively involved or complicit in

---

[2] Relator spills considerable ink arguing that this Court should relax Rule 9(b)'s pleading standard. (D.E. 62 at 18–27.) Relator's argument is unpersuasive; the cases she cites are inapposite, and her rationale is entirely contradictory. In any event, she has failed to comply with the requirements for so relaxing Rule 9(b)'s strictures. That is, she did not "specifically allege [in the complaint] that [D]efendants have exclusive control of [the] information [she] requires," "accompany such an allegation with a statement of facts upon which [her] allegation is based," and "delineate at least the nature and scope of [her] effort[s] to obtain, before filing the complaint, the information needed to plead with particularity." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 285 (3d Cir. 1992). Accordingly, this Court will analyze Relator's allegations in the SAC through the lens of Rule 9(b).

7

this practice. Kayal, however, is a medical center, and the SAC provides no details as to *who* from Kayal engaged in the scheme or when the fraudulent billing actually occurred. The SAC's conclusory assertions of complicity, moreover, do not provide any details as to how the other Defendants were tied to or engaged in the scheme, which fails to put each entity on notice of the specific conduct with which they are charged.[3] *See Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 386 (D.N.J. 2019) (explaining that allegations in a complaint must "place Defendants on notice of the claims against each of them"). In sum, the SAC's bare assertions and group pleadings plainly run afoul of Rule 9(b).

Relator insists that, according to the Third Circuit's holding in *United States ex rel. Bookwalter v. UPMC*, the allegations in the SAC are specific enough to comply with Rule 9(b). 946 F.3d at 176. Defendant's reliance on *Bookwalter* is misplaced. There, the relator's complaint went "into great detail about specific physicians[] . . . [and] allege[d] specific ways that surgeons padded their bills." *Id.* at 176–77. "The sum total of the[] allegations [told] a detailed story about how the defendants designed a system to reward surgeons for creating and submitting false claims." *Id.* at 177. That is not the case here.[4] Consequently, Counts 1 and 2 will be dismissed.

---

[3] The SAC alleges that Kayal "occupie[s] the fourth floor of a wing of" Pascack Valley and "generate[s] tens of millions of dollars in revenues for Defendants." (D.E. 54 ¶ 75.) Those facts, standing alone, do not suggest that Defendants were either engaged in the scheme or benefitting from it. Nor do the vague emails and undated statements—for which Relator has provided no context—establish the requisite connection. (*Id.* ¶¶ 64–65.) The email statements do not evince an unlawful scheme; they instead suggest that procedures removed from the IPO list *may* still be done on an inpatient basis. (*Id.*) The most this Court can glean from the other statements in the SAC is that some of Defendants' employees were aware of Kayal's alleged wrongdoing. Awareness of another party's wrongdoing, however, is not a basis for fraud liability. *See, e.g., United States ex rel. Tahlor v. AHS Hosp. Corp.*, 2013 WL 5913627, at *15 (D.N.J. Oct. 31, 2013) (mere awareness of another entity's false billing is not a basis for liability).

[4] Notably, Relator also has failed to provide "reliable indicia that lead to a strong inference that claims *were actually submitted*." *Foglia*, 754 F.3d at 157–58 (emphasis added). She cannot satisfy that requirement by "merely . . . describ[ing] a private scheme in detail but then . . . alleg[ing] . . . that claims requesting illegal payments must have been submitted, were likely submitted[,] or should have been submitted to the Government.'" *United States ex rel. Greenfield v. Medco Health Sols.*, 880 F.3d 89, 98 (3d Cir. 2018) (alterations in original) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)).

2. Materiality

Even if the SAC did comply with Rule 9(b), it contains insufficient allegations of materiality. "The [FCA's] materiality standard is demanding." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194 (2016). That is so because the FCA was not intended to be "'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Id.* (internal citation omitted). Indeed, misrepresentations are not deemed material under the FCA "merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Id.* Materiality can be demonstrated, however, through the Government's decision to condition payment on the compliance with certain provisions. *Id.* But where "the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." *Id.* at 195.

Here, Relator plainly fails to plead that Defendants' alleged misrepresentations were material. First, the SAC does not state that there is any difference between the amount Medicare pays for inpatient versus outpatient services. Without any nonconclusory allegations to that effect, Counts 1 and 2 must be dismissed. Second, and fatal to Relator's claims based on inpatient admissions for THA surgeries, the CMS expressly indicated that it would pay in full claims for THA surgeries regardless of the provider's compliance with the site-of-service rules. As CMS stated:

9

> We are finalizing a policy to exempt procedures that have been removed from the IPO list from eligibility for referral to RACs for noncompliance with the 2-midnight rule within the 2-calendar years following their removal from the IPO list. These procedures will not be considered by the BFCC-QIOs in determining whether a provider exhibits persistent noncompliance with the 2-midnight rule for purposes of referral to the RAC nor will these procedures be reviewed by RACs for "patient status." During this 2-year period, BFCC-QIOs will have the opportunity to review such claims in order to provide education for practitioners and providers regarding compliance with the 2-midnight rule, but claims identified as noncompliant will not be denied with respect to the site-of-service under Medicare Part A.

Medicare Program: Changes to Hospital Outpatient Prospective Payment and Ambulatory Surgical Center Payment Systems and Quality Reporting Programs, 84 Fed. Reg. at 61365. In other words, from January 2020 until January 2022, the inpatient versus outpatient determination was not material. Because this moratorium applied to THA surgeries during Relator's entire tenure at Pascack Valley, Relator will not be able to establish the materiality of improper admissions for those procedures. Therefore, Counts 1 and 2 will be dismissed without prejudice, but they will be dismissed with prejudice as to any claims based on improper site-of-service billing for THA surgeries.[5]

**B. Count 3: 31 U.S.C. § 3729(a)(1)(C)**

Section 3729(a)(1)(C) imposes liability on persons who conspire to commit any FCA violation under section 3729(a)(1). The Third Circuit has recognized that "[t]here can be no liability for conspiracy where there is no underlying violation of the FCA." *United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 507 n.53 (3d Cir. 2017) (quoting *Pencheng Si v. Laogai*

---

[5] Defendants ask this Court to dismiss all the claims in the SAC with prejudice because Relator has already twice amended the original complaint. Although Relator has amended the complaint more than once, she has not had the benefit of a ruling from this Court. Moreover, Defendants have not demonstrated that amendment would be futile. Accordingly, this Court will allow Plaintiff to amend the SAC one final time. Failure to cure the pleading deficiencies identified in this Opinion may result in dismissal with prejudice.

10

*Rsch. Found.*, 71 F. Supp. 3d 73, 89 (D.D.C. 2014)). Consequently, because Relator has not adequately pleaded an underlying FCA violation against any Defendant, Count 3 will be dismissed without prejudice.

### C. Count 4: 31 U.S.C. § 3730(h)[6]

Relator insists that her employer, Defendant Pascack Valley, retaliated against her in violation of the FCA's anti-retaliation provision, 31 U.S.C. § 3730(h)(1). Relator has not sufficiently alleged that Pascack Valley was on notice of her protected activity, let alone that she was terminated because of it, and so Count 4 will be dismissed.

Section 3730(h)(1) of the FCA provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). To state a claim thereunder, a plaintiff must allege two elements: "(1) that he [or she] engaged in protected conduct[7], and (2) that he [or she] was discriminated against because of his [or her] protected conduct."[8] *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 76 (3d

---

[6] Notably, Relator's opposition brief did not meaningfully rebut Defendants' arguments with respect to Counts 4 and 5. In such circumstances, courts in this District routinely deem those claims to be abandoned. *See, e.g.*, *Haghighi v. Horizon Blue Cross Blue Shield of N.J.*, No. 19-20483, 2020 WL 5105234, at *2 n.2 (D.N.J. Aug. 31, 2020) (collecting cases). In any event, Counts 4 and 5 will be dismissed on other grounds.

[7] "Determining what constitutes 'protected conduct' is a fact specific inquiry"; however, it "can include internal reporting and investigation of an employer's false or fraudulent claims." *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 188 (3d Cir. 2001).

[8] Because an FCA retaliation claim does not require proof of an underlying FCA violation, it is evaluated under Rule 8's more-relaxed pleading standard. *See Hutchins*, 253 F.3d 176, 185–86 (3d Cir. 2001); *see also United States ex rel. Perri v. Novartis Pharms. Corp.*, No. 15-6547, 2019 WL 6880006, at *19 n.22 (D.N.J. Feb. 21, 2019).

11

Cir. 2018). "[T]o trigger FCA protection," a compliance employee must allege that he or she "act[ed] outside [his or her] normal job responsibilities [or] notif[ied] a party outside the usual chain of command," and he or she must "make clear that [the employer] was on notice that he [or she] was attempting to stop [the employer] from violating the FCA and not merely" fulfilling his or her normal job duties. *United States ex rel. Ascolese v. Shoemaker Constr. Co.*, 55 F.4th 188, 195 (3d Cir. 2022). The second element requires a plaintiff to assert that his or her "employer had knowledge that he [or she] was engaged in 'protected conduct' and that the employer retaliated against him [or her] because of that conduct." *Hutchins*, 253 F.3d at 188.

Here, the SAC fails to allege that Relator—as the Director of Case Management at Pascack Valley whose responsibilities included reviewing hospital admissions—went beyond her normal job responsibilities when she reported errors and discrepancies regarding patients' admissions. According to the SAC, Relator complained about the alleged scheme to her direct reports and a medical director. (D.E. 54 ¶¶ 70–71.) The SAC does not, however, explain whether Relator "violated her employer's established communication protocol, broke her chain of command, or otherwise acted outside of the scope of her job duties." *Ascolese*, 55 F.4th at 195 (citing *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 771–72 (10th Cir. 2019)). Without any such allegations, Relator fails to sufficiently plead that she engaged in protected activity of which Pascack Valley was aware.[9] Therefore, Count 4 will be dismissed without prejudice.

---

[9] Even if Relator sufficiently pleaded that she had engaged in protected activity, the SAC contains only speculative and conclusory assertions of causation—*i.e.*, that that protected activity was the reason for her termination. *Hutchins*, 253 F.3d at 186. Though Relator's retaliation claim need not meet Rule 9(b)'s heightened pleading standard, such bare allegations do not satisfy even the more-relaxed pleading standard of Rule 8.

**D.  Count 5:  N.J. Stat. Ann. 34:19-1,** *et seq.*

When a "district court has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction over" the remaining claims.  28 U.S.C. § 1367(c)(3).  "The decision to retain or decline jurisdiction over state-law claims is discretionary." *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009).  "That discretion, however, is not unbridled." *Id.* The decision should instead "be based on considerations of 'judicial economy, convenience and fairness to the litigants.'" *Id.*  Relator does not suggest that any of these considerations weigh in favor of this Court exercising jurisdiction over the remaining CEPA claim, and accordingly, this Court declines to do so.[10]

### IV.  CONCLUSION

For the reasons set forth above, Defendants' Motions are **GRANTED** and the SAC is **DISMISSED**.  An appropriate order follows.

                                                                                                                /s/ Susan D. Wigenton  
                                                                                                              **SUSAN D. WIGENTON, U.S.D.J.**

Orig:       Clerk  
cc:         Edward S. Kiel, U.S.M.J.  
              Parties

---

[10] Even if this Court did exercise jurisdiction thereover, Relator's CEPA claim would be dismissed for the reasons already set forth in this Opinion.